Argued March 2, decided March 10, 1914.

## NICKLAS v. RATHBURN.

(139 Pac. 567.)

**Criminal Law—Jurisdiction—Justices of the Peace.**

1. Sections 2411, 2412, L. O. L., giving justices' courts jurisdiction of specific crimes and of all misdemeanors where the punishment prescribed shall not exceed three months' imprisonment or a fine of not more than $100, does not confer jurisdiction of a violation of Sections 5246, 5247, L. O. L., relating to salmon fishing in Tillamook Bay and its tributaries, and providing for a fine of not less than $50 nor more than $1,000 for violation thereof.

[As to power of the states to regulate the taking of fish in tide waters, see note in 23 Am. St. Rep. 837.]

**Fish—Unlawful Fishing—Acts Constituting—Seizure of Nets—Recovery.**

2. Section 5247, L. O. L., providing that any person violating the act (relating to salmon fishing in Tillamook Bay and its tributaries) shall be fined, and shall forfeit the nets, seines or other unlawful devices, does not authorize the seizure of the nets by the deputy fish warden and their sale on the following day, after the owner has pleaded guilty to the charge of unlawful fishing, without notice of sale or other proceedings, and the owner in such case is entitled to recover their value.

[As to when an appliance is used so as to bring it within the penalties under game and fish laws, see note in Ann. Cas. 1912A, 312.]

From Tillamook: WILLIAM GALLOWAY, Judge.

This is an action of trover by Dan Nicklas against S. L. Rathburn to recover $242.35 for the conversion of personal property. There was a judgment in the lower court in favor of plaintiff for $242 and the defendant appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford* and *Mr. M. J. Gersoni,* with an oral argument by *Mr. Gersoni.*

For respondent there was a brief over the names of *Mr. T. B. Handley* and *Mr. Webster Holmes,* with an oral argument by *Mr. Handley.*

In Banc.   MR. JUSTICE RAMSEY delivered the opinion of the court.

On November 7, 1912, the plaintiff was fishing for salmon, contrary to law, in the waters of Hoquarton Slough, a tributary of Tillamook Bay, above the intersection of said slough with the west line of section 24, township 1, south, range 10 west of the Willamette Meridian in Tillamook County.   At that time, he was so fishing with one drift net and other fishing appliances of the alleged value of $115.95.   Said property belonged to the plaintiff.   On the same day H. Thiesen was illegally fishing for salmon at the same place at which the plaintiff was fishing, as aforesaid, with fishing appliances of the same kind that the plaintiff had, as stated *supra*.   The appliances which said Thiesen had belonged to him, and were of the alleged value of $126.40.   The defendant was, at all the dates mentioned in the complaint, a deputy fish warden, and, on said 7th day of November, 1912, as such officer, he arrested the plaintiff and said Thiesen for said illegal fishing, and seized their nets and fishing appliances, and took the plaintiff and Thiesen before E. W. Stanley, a justice of the peace for Tillamook County, and made and filed before said justice complaints separately charging them with the crime of fishing for salmon in said waters on November 7, 1912, in violation of the law of this state, making it unlawful to fish, with nets, for salmon in said waters on said date. The plaintiff and said Thiesen were arraigned before said justice of the peace upon said complaints, and they each pleaded guilty of the charge made against them respectively, but the cases against them were postponed by said justice of the peace, by agreement of the parties, until December 11, 1912, and, on that day, said justice of the peace entered judgments against them, fining each $50, and requiring them to

pay the costs, but said justice made no order or judg-
ment concerning the nets and fishing appliances, which
the plaintiff and said Thiesen were using, when fishing
as stated *supra.* The complaints against the plain-
tiff and said Thiesen were, according to the defend-
ant's answer, based upon Section 5246, L. O. L. The
defendant, acting in accordance with what he sup-
posed to be his duty, as a deputy fish warden, on or
about the 8th day of November, 1912, and before any
judgment was entered against the plaintiff or said
Thiesen, by said justice of the peace, upon their pleas
of guilty in said cases, sold the nets and fishing appli-
ances belonging to the plaintiff for $25, and the nets
and appliances belonging to Thiesen for $25. Thiesen,
after the defendant sold his said nets and appliances,
as stated *supra,* and before the commencement of this
action, sold and assigned his said nets and appliances
and all rights of action therefor to the plaintiff. The
plaintiff brought this action against the defendant to
recover $242.35, as damages for the conversion of said
nets and fishing tackle, claiming that the action of the
defendant in disposing of said property was unlawful.
The complaint is in the ordinary form for trover, and
the defendant's answer sets up the illegal fishing of the
plaintiff and Thiesen, their arrest and conviction, and
the sale of said property, as stated *supra,* as a defense.
The trial court instructed the jury to find a verdict for
the plaintiff, and they, accordingly, found a verdict for
him for $242. The defendant appeals, and claims that
the court below erred in instructing the jury to find a
verdict for the plaintiff.

The defendant in his evidence says that he seized the
nets, and stored them on the P. R. & N. wharf, and
called up the master fish warden's office and told him
what he had done. The defendant says that, not hav-
ing any place to rack and properly take care of the

nets, he sold them for $50. The sale seems to have been made on the day after the nets were seized, and no notice appears to have been given of the sale. The defendant did not have any writ or warrant for making said sale. He seized the nets one day and sold them the next, and sent the $50 obtained for them to the master fish warden. F. D. Small, who purchased the nets of the defendant for $50, testified that they were worth, when he bought them, $250. The defendant, by his answer and in his brief, alleges that, in arresting the plaintiff and Thiesen, and in seizing and selling their nets, he proceeded under Sections 5246 and 5247, and not under Section 5321, L. O. L.

The question for decision is: Did the defendant, as deputy fish warden, have authority to sell the nets belonging to the plaintiff and Thiesen under the circumstances stated *supra?* Sections 5246 and 5247, L. O. L., are Sections 1 and 2 of Chapter 52 of the Laws of 1907. Section 5321, L. O. L., is Section 51 of the act of 1901 (Laws 1901, p. 347). This section provides that nets, used by persons, when fishing contrary to said act, shall be seized, confiscated, condemned and sold, and the proceeds of the sale paid to the State Treasurer. This section makes it the duty of the fish warden to seize and take into his possession all fishing appliances unlawfully operated by any person according to the terms of said act, and, immediately upon such seizure, the district attorney is required to institute an action in the Circuit Court to have such appliances condemned, confiscated and sold, etc.

1. Section 5247, L. O. L. (part of the act of 1907 referred to *supra*), is in the following words:

"Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than

$50, nor more than $1,000, and costs, for each and every offense, and in addition thereto shall forfeit the net or nets, seine or seines, or any other device or devices so unlawfully used.''

Section 5246, L. O. L., applies only to fishing in Tillamook Bay and its tributaries, and it makes it unlawful to fish for salmon, above tidewater, in any of the ʟributaries of said bay (excepting by hook and line), below the points named in said section, from March 20th to December, in any year. Under this act it was unlawful to fish for salmon with a net at the points where the plaintiff and Thiesen were fishing on November 7, 1912. The act of 1907 provides that any person violating it shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than $50 nor more than $1,000; but it does not state what court shall have jurisdiction of offenses under said act. Sections 2411 and 2412, L. O. L., state what jurisdiction Justices' Courts have in criminal actions, and, after referring to offenses made punishable by certain named sections, it is stated that Justices' Courts shall have jurisdiction also of all misdemeanors committed or triable in their respective counties, where the punishment prescribed shall not exceed three months' imprisonment in the county jail, or a fine of not more than $100. Under Section 5247, L. O. L., the maximum penalty to be imposed is a fine of $1,000, and hence Justices' Courts have no jurisdiction of such offenses under the general provision contained in Section 2412, L. O. L., because that section confers jurisdiction on such courts only where the maximum fine does not exceed $100. As Section 5247, L. O. L., does not confer jurisdiction of the crime there defined upon Justices' Courts, it seems doubtful whether the Justice's Court of Tillamook County had jurisdiction of the offense charged against the plaintiff and Thiesen;

but it is not necessary to decide that point, as it is immaterial to the question involved in this case, as we view it.

. 2. The complaints made against the plaintiff and Thiesen in the Justice's Court of Tillamook County contained no averments relating to a forfeiture of their nets, and the judgments of conviction made no reference thereto. The defendant, as deputy fish warden, seized said nets one day and sold them the next, without giving any notice of sale, and sent the proceeds of the sale to the master fish warden. The only proceedings that were had to effect a forfeiture of said property were the seizure and sale of said property. It was all accomplished in two days. The law under which the defendant acted (Section 5247, L. O. L.) provides that any person violating any of the provisions of said act shall be fined not less than $50, nor more than $1,000, for each and every offense, "and in addition thereto shall forfeit the net or nets, seine or seines, or any other device or devices so unlawfully used." This act prescribes no procedure whatever for determining or effecting such forfeiture. It does not say how this forfeiture is to be determined, or who shall bring it about. It does not mention the master fish warden or a deputy fish warden or the district attorney; nor does it expressly confer any power upon any officer in relation to such forfeitures. It is the settled rule that statutes imposing forfeitures are to be construed strictly, and in a manner as favorable to the person whose property is to be seized as is consistent with the principles of interpretation: 19 Cyc. 1358.

The plaintiff contends that he was deprived of his property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. In this case, there was no trial, writ

or process in relation to the forfeiture. The defend-
ant seized the property one day and sold it the next.
Was that "due process of law"?

19 Cyc. 1359, says:

"There can be no forfeiture of property unless the
forfeiture be judicially determined. A statute or
ordinance which allows the seizure and confiscation of
a person's property by ministerial officers without in-
quiry by a court or an opportunity of being heard in
his own defense is a violation of the elementary prin-
ciples of law and the Constitution."

Judge Cooley, in his Constitutional Limitations (6
ed.), 443, 444, says:

"And every man is entitled to a certain remedy in
the law for all wrongs against his person or personal
property, and cannot be compelled to buy justice or to
submit to conditions not imposed upon his fellows as
a means of obtaining it. Nor can a party by his mis-
conduct so forfeit a right that it may be taken from
him without judicial proceedings in which the forfeit-
ure shall be declared in due form. Forfeitures of
rights and property cannot be adjudged by legislative
acts, and confiscation without judicial hearing, after
due notice, would be void, as not being due process of
law."

In Volume 2 of his work on the Constitution, at
page 863, Professor Willoughby says:

"It is not essential to due process of law that pro-
ceedings and adjudications, though admittedly of a
judicial nature, should be had in courts of law. It not
infrequently happens that administrative boards or
officers in the discharge of their duties are compelled to
consider and decide·upon matters of a judicial char-
acter, and, provided an adequate opportunity is offered
to the parties to appear and defend, due process of
law is not denied by making the administrative deter-
minations they reach conclusive and not open to fur-
ther consideration in the courts, except of course, as
to the matter of the jurisdiction of the officers or

boards in question, or as to whether adequate notice and opportunity to defend has been given the parties affected. In short, 'due process' is not necessarily judicial process.''

The same author, in the same volume, at page 1293, says:

''Generally speaking, it may be said that, while wide discretionary power may constitutionally be granted to administrative agents, that discretion must be one which must be guided by reason, justice, and impar-. tiality, and must be exercised in the execution of predetermined policies by legislative acts, or fixed by the common law.''

In the case of *Darst* v. *People,* 51 Ill. 286 (2 Am. Rep. 301), the facts were that the town of Eureka had adopted an ordinance declaring all intoxicating liquors kept within the limits of the town for the purpose of being sold or given away, to be drunk within the town, as a beverage, to be a nuisance. The ordinance further directed the police officers to abate such nuisance by removing the liquors beyond the town limits. A man kept a grocery store in the town, and the plaintiffs in error, who were police officers and trustees of the town, went to his grocery and demanded his liquors. He refused to deliver the liquors to them, and they broke open doors and took several kegs of whisky and beer, put them in a wagon, and carried them beyond the limits of the town, and left them there. The officers who did this were indicted for riot, and convicted, and they took the case to the Supreme Court by writ of error. Passing on the case, the Supreme Court says:

''The plaintiffs in error sought to defend under this ordinance, but the Circuit Court most properly held such a defense unavailing. Even if the power was conceded to the town of seizing, carrying away, and destroying this man's beer and spirits, if kept for sale to be drunk within the town, as to which we express

no opinion, the question not having been argued, yet it certainly cannot be denied that such a power could be exercised only by some judicial instrumentality. Even under the ordinance, the beer and spirits were not a nuisance liable to summary destruction, unless they were kept for sale or gift, to be drunk within the town; and whether they were kept for that purpose was a question which the owner had the right to submit to a court of justice before his property could be taken away. The board of trustees of Eureka had no more power to authorize their police officers to perform acts of this character than they had to authorize them at discretion to assess a fine of $50 upon any man whom they might believe to keep spirits for sale, and seize his property or person for its payment, without inquiry before a court, or an opportunity of being heard in his own defense. Such proceedings are a violation of the elementary principles of our Constitution and laws. * * A man's property cannot be seized except for a violation of law, and whether he has been guilty of such violation cannot be left to police officers or constables to determine."

In *Gear* v. *Bullerdick,* 34 Ill. 99, the question was whether a franchise to keep a ferry across the Mississippi had been forfeited, and in deciding that question the court, *inter alia,* says:

"There is an important fact to be established before a forfeiture can be declared, and that is: Has the pretended ferry authority—is it a legally established ferry? This question the owner of the rival ferry cannot determine for himself; it must go to the court. He cannot be his own judge, and at the same time the executioner."

The case of *Ieck* v. *Anderson,* 57 Cal. 251 (40 Am. Rep. 115), is closely in point with the case under consideration. It was an action of replevin to recover a net, three boats, and fishing tackle, which the owner had rented to Chinese fishermen for the purpose of fishing in the tidewaters of the state. These fishermen were fishing in Montezuma cutoff slough by casting

and extending their nets more than one third of the way across the slough. That method of catching fish was prohibited by a statute of the State of California, which made such method of fishing a misdemeanor, and further provided that all nets, seines, fishing tackle, boats or other implements used in catching or taking fish in violation of said act should be forfeited and seized by a peace officer of the county or his assistant. The law provided, also, that the said officer or his assistant might destroy or sell said property at public auction, upon giving public notice for five days. The defendant in that case was a constable in the county, and, in that capacity, he arrested the fishermen for a violation of said law, and seized their nets, boats and fishing tackle. The fishermen were duly convicted and sentenced to pay fines. In passing on the case, the Supreme Court says:.

"But the statute under consideration contained no provision whatever for determining whether the property was liable to condemnation for the forfeiture denounced against it for the criminal acts of those who had it in their possession. It merely authorized a police officer to seize the property without warrant or process, to condemn it without proof or the observance of any judicial form, and to destroy it without notice of any kind, or sell it upon notice posted anywhere in the county for five days. Such an enactment cannot be harmonized with those constitutional guaranties, which are supposed to secure everyone within the state in his rights of liberty and property. 'No man,' says Mr. COOLEY in his work on Constitutional Limitations, 'can, by his misconduct, forfeit his property, unless steps are taken to have the forfeiture declared in due judicial proceedings. Forfeitures of rights or property cannot be adjudged by legislative act; and confiscation without judicial hearing and judgment after due notice would be void, as not due process of law.' * * The law of the land in judicial proceedings requires a hearing before condemnation

and judgment before dispossession.    It follows that so much of the statute under consideration as authorized defendant to arbitrarily seize and destroy or sell the property of the plaintiff for alleged forfeiture without judicial proceedings for its condemnation, or monition or notice, actual or constructive, to its owner, of the charges for which the forfeiture was claimed, and of the time and place for determining them, was unconstitutional and void, and afforded no protection to the defendant for the detention of the property in question.''

While, as Professor Willoughby says, as quoted *supra,* ''due process of law'' does not always signify proceedings in the ordinary courts of justice, yet a forfeiture of property, for the commission of crime, cannot be determined and enforced without some proper proceedings before a court, or some other tribunal or officers, clothed with authority to determine whether a forfeiture has occurred, and the owner of the property must have an opportunity to appear before such court, tribunal or officer, and show that no forfeiture has taken place.    Nothing less than this, in cases of forfeitures for crime, is due process of law.

In the case under consideration, the plaintiff and Thiesen were deprived of their property without due process of law.    The defendant, as deputy fish warden, seized their nets and other appliances one day and sold them the next, to the first person that made him an offer for them, for about one fifth of their value.    The defendant acted as accuser, witness and judge, and disposed of the whole matter in 48 hours, or less time.    His sale of the property was wrongful and without authority.    The law under which he claims to have acted does not purport to confer on such an officer any authority to sell the nets or fishing appliances of offenders.

We find no error in the record, and the judgment of the court below is affirmed.    AFFIRMED.